UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TINA L. COOKS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:15-CV-1929-B |
| | § | |
| AUTONATION, ROSE MARY SOTO, | § | |
| and RAY STAFFIN, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants AutoNation's, Rose Mary Soto's, and Ray Staffin's Amended

Motion to Compel Arbitration and to Stay or Dismiss (Doc. 36). For the reasons that follow, the

Court **GRANTS** the Motion in its entirety.

## I.

## BACKGROUND

This is an employment discrimination case that Plaintiff Tina L. Cooks ("Cooks") filed after

Defendant AN Texas Region Management, Ltd. ("AN TRM")[1] terminated her employment. Cooks

is suing AN TRM and two of its employees—Rose Mary Soto and Ray Staffin—for race and age

discrimination, as well as retaliation. Doc. 3, Compl. 1–2. All Defendants have moved to compel

arbitration, arguing that Cooks signed a binding agreement to arbitrate any disputes between her and

her employer as a condition of employment. Doc. 37, Defs.' Br. in Supp. of Am. Mot. to Compel Arb.

---

[1] Cooks has identified this Defendant as AutoNation, but AN TRM insists that it has been
misidentified. *See, e.g.*, Doc. 36, Am. Mot. to Compel Arbitration and to Stay or Dismiss 1 [hereinafter "Am.
Mot. to Compel Arb."].

1, 4–7 [hereinafter "Defs.' Br. in Supp."]. Cooks has responded, *see* Docs. 38–40, and the Court is ready to rule on the Motion.

## II.

## LEGAL STANDARD

In enacting the Federal Arbitration Act (FAA), "Congress . . . expressed a strong policy favoring arbitration before litigation." *JS & H Constr. Co. v. Richmond Cty. Hosp. Auth.*, 473 F.2d 212, 214–15 (5th Cir. 1973). Under the FAA, "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act further authorizes a United States district court to enforce valid arbitration agreements if one of the parties to the agreement petitions it to do so. *Id.* § 4.

"In ruling upon a motion to compel arbitration, the [C]ourt first determines whether the parties agreed to arbitrate the particular type of dispute at issue." *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012). "Answering this question requires considering two issues: '(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.'" *Id.* (quoting *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007)).

## III.

## ANALYSIS

Defendants have requested that the Court both enforce the Arbitration Agreement between AN TRM and Cooks, and stay or dismiss the case during the arbitration proceedings. The Court will

address each request in turn.

A.    *Enforceability of the Arbitration Agreement*

      1.    <u>A Valid Agreement Exists Between the Parties</u>

The Court's first task is to determine whether the Arbitration Agreement between Cooks and AN TRM is valid. To do this, the Court applies "ordinary state-law principles that govern the formation of contracts." *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008). In Texas, the elements of a valid contract are: "(1) an offer; (2) an acceptance in strict compliance with terms of offer; (3) a meeting of the minds; (4) a communication that each party consented to the terms of the contract; (5) execution and delivery of the contract with an intent it become mutual and binding on both parties; and ([6]) consideration." *Advantage Physical Therapy v. Cruse*, 165 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

The Arbitration Agreement fulfills all of these elements. AN TRM offered to employ Cooks if, *inter alia*, she signed the Arbitration Agreement. Doc. 37-1, Ex. A1, Offer Letter 4. Cooks accepted this offer when she signed the Offer Letter and the Arbitration Agreement. *See id.*; Doc. 37-1, Ex. A2, Arbitration Agreement 7. Although Cooks insinuates that she did not electronically sign the latter, she stops short of making the assertion directly and states only that she "does not remember signing an Arbitration Agreement electronically" when she transitioned from temporary to permanent employment. Doc. 39, Pl.'s Br. in Supp. of Am. Mot. to Deny Defs.' Am. Mot. to Compel Arb. 3 [hereinafter "Pl.'s Br. in Supp."]. But this bald statement is all she offers to impugn her signature's legitimacy. Notably, Cooks does not contest that her signature is accompanied by the last five digits of her Social Security Number, which further bolsters its authenticity.

There was also a meeting of the minds, which is "the mutual understanding and assent to the

agreement regarding the subject matter and the essential terms of the contract." *Potcinske v. McDonald Prop. Invs., Ltd.*, 245 S.W.3d 526, 530 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Here, the Offer Letter clearly states that Cooks was required to sign the Arbitration Agreement as a condition of her employment, and nothing indicates that she did not understand the terms of the Agreement itself. *See* Doc. 37-1, Ex. A1, Offer Letter 4. Although Cooks claims to have forgotten about the Agreement, that is no reason to excuse her from her obligation. *See* Doc. 38, Pl.'s Am. Mot. to Deny Defs.' Mot. to Compel. Arb. 1 [hereinafter "Pl.'s Am. Mot. to Deny"].

As for the remaining elements, both parties signed the Arbitration Agreement, which committed them both to arbitrate "any claim, dispute, and/or controversy . . . that the Employee or the Company may have against the other." Doc. 37-1, Ex. A2, Arbitration Agreement 5. "Mutual promises to arbitrate employment [disputes] constitute sufficient consideration for such agreements." *Nazareth Hall Nursing Ctr. v. Melendez*, 372 S.W.3d 301, 305 (Tex. App.—El Paso 2012, no pet.). Once signed, the Arbitration Agreement was "placed in [Cooks'] employee file." Doc. 37-1, Ex. A, Aff. of Celeste Arevalo ¶ 11. With all elements fulfilled, the Court concludes that the Arbitration Agreement was a valid contract between Cooks and AN TRM.

2.    The Arbitration Agreement Covers the Present Dispute

"When determining whether a dispute is covered by the scope of an arbitration agreement, . . . 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Safer v. Nelson Fin. Grp., Inc.*, 422 F.3d 289, 294 (5th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). "[A]rbitration should not be denied 'unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Id.* (quoting *Personal Sec. & Safety Sys. Inc.*

*v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002)).

The Arbitration Agreement here has a very broad scope, as it applies to:

[A]ny claim, dispute, and/or controversy (including, but not limited to, any claims of discrimination and harassment, whether they be based on state law, Title VII of the Civil Rights Act of 1964, as amended, as well as all other state or federal laws or regulations) that the Employee or the Company may have against the other.

Doc. 37-1, Ex. A2, Arbitration Agreement 5. Furthermore, "Company" is also defined expansively to include "its parents, subsidiaries, affiliates, predecessors, successors and assigns, their (including the Company's) respective owners, directors, officers, managers (both direct and indirect), employees, vendors, and agents." *Id.* Thus, Cooks' claims against all Defendants appear to fall within the Arbitration Agreement's scope, per the plain meaning of the contract's language. At the very least, the Agreement is "susceptible of an interpretation which would cover the dispute at issue." Thus, there is a valid arbitration agreement that covers Cooks' claims, which means that arbitration is the proper forum to resolve this dispute.

B.    *Staying or Dismissing the Case*

Once a court determines that it should refer a case to arbitration, the FAA obligates it to stay the proceedings in the case. 9 U.S.C. § 3; *Innova Hosp. San Antonio L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 613 (N.D. Tex. 2014). When all of a plaintiff's claims are subject to arbitration, however, a court may also dismiss the case with prejudice. *Allee Corp. v. Reynolds & Reynolds Co.*, No. 15-CV-0744, 2015 WL 1914663, at *8 (N.D. Tex. Apr. 28, 2015). Here, where all of Cooks' claims are subject to arbitration per the Arbitration Agreement, the Court concludes that "retaining jurisdiction and staying the action will serve no purpose." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). The Court therefore dismisses Cooks' claims

with prejudice.

## IV.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' Amended Motion to Compel Arbitration and to Stay or Dismiss and **ORDERS** that the parties arbitrate their dispute as required by the Arbitration Agreement. The Court further **ORDERS** that Cooks' claims be **DISMISSED with prejudice**.

SO ORDERED.

SIGNED: December 30, 2015.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE